UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETOSKEY INVESTMENT GROUP, LLC,
a Michigan limited liability company,

       Plaintiff,

v.

BEAR CREEK TOWNSHIP,
a Michigan municipal corporation,

       Defendant.
_____/

Case No. 5:03-CV-14

HON. DAVID W. McKEAGUE[1]

**OPINION**

This case arises because of a dispute over actions that occurred subsequent to, but are related to a state court Consent Judgment into which the parties entered in 2002. Defendant filed a motion for summary judgment and argues that this case properly belongs in state court, based on the *Rooker-Feldman* doctrine and *Younger* or *Burford* abstention. Defendant asks the Court to abstain from exercising jurisdiction and dismiss plaintiff's complaint.[2] Plaintiff filed a motion for partial summary judgment on its Substantive Due Process claim (Count II), Takings claim (Count IV) and its Fraud claim (Count IX). For the reasons that follow, the Court will deny plaintiff's motion for partial summary judgment, grant judgment in defendant's favor on counts I, IV and IX and dismiss plaintiff's remaining claims.

---

[1] The Hon. David W. McKeague, United States Circuit Judge for the Sixth Circuit Court of Appeals, sitting by designation.

[2] The Court denied defendant's motion for summary judgment based on the *Rooker-Feldman* doctrine at the hearing on May 31, 2005.

1

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff purchased property in Bear Creek Township that was originally zoned as Single Family Residential and Farm and Forest. Plaintiff intended to develop the property with a mixture of commercial and residential uses. Plaintiff presented a plan to Bear Creek Township for a Mixed Use planned unit development ("PUD"). The Township Planning Commission denied the requested zoning approvals. Litigation ensued in the Emmet County Circuit Court. The parties eventually entered into a Consent Judgment on March 26, 2002, which specified how plaintiff could develop its property. The Consent Judgment contains a provision that states, in relevant part, "[t]his Court shall retain jurisdiction over this matter for purposes of enforcing and/or interpreting the terms and or intent contained herein." Def.'s Mot. for Summ. J., Ex. 1, ¶ 13.

A local attorney who opposed plaintiff's project requested that the Township publish a notice indicating that the Township amended its zoning ordinance. On May 2, 2002, Township counsel informed plaintiff's in-house counsel that the Township was receiving pressure to publish such a notice. Plaintiff's counsel responded by explaining that the requested notice was not appropriate because the Consent Judgment was not a rezoning, that Michigan statutes did not require such publication and that publishing such a notice would be contrary to the terms and intent of the Consent Judgment.

Defendant published a "Notice of Amendment to Interim Zoning Ordinance," over plaintiff's objections, on May 3, 2002. On May 9, 2002, a Township resident filed a "Notice of Intent to File Petition Under M.C.L. 125.282," which deals with zoning ordinances and the referendum process. On May 31, 2002, Township residents filed a "Petition for Referendum" pursuant to M.C.L. 125.282. After May 31, 2002, the Township prevented plaintiff from proceeding with the

development of its Property pursuant to the terms of the Consent Judgment pending the results of the purported referendum on rezoning.

In response to the Township's proposed referendum on the Consent Judgment, plaintiff filed motions in state court to enforce the Consent Judgment and for declaratory and injunctive relief to prevent the referendum.[3] Defendant did not oppose the referendum efforts of the Township's citizens. The Emmet County Circuit Court concluded that the Consent Judgment was subject to the right of referendum. Plaintiff filed a motion for rehearing/reconsideration, to enforce the Consent Judgment, or in the alternative, to set aside the Consent Judgment and set the case for trial. The state court denied the motion on July 30, 2002. On November 5, 2002, a referendum election was held and the rezoning was voted down.

The Michigan Court of Appeals reversed the decision of the Emmet County Circuit Court and held that the trial court erred in denying the motion to enforce the Consent Judgment and allowing the issue of a referendum with regard to the zoning of the parcel addressed in the consent judgment. That decision has been appealed to the Michigan Supreme Court, by way of an Application for Leave, by an intervening party. However, the Township did not appeal the Michigan Court of Appeals' decision. Plaintiff's original complaint sought relief in seven separate counts for actions that occurred prior to the entry of the Consent Judgment. While the case was pending before the Michigan Court of Appeals, plaintiff filed the instant litigation. On March 22, 2004, this Court entered an opinion and order denying defendant's motion for summary judgment and staying these federal proceedings pending the resolution of the state appellate proceedings.

---

[3] At the time plaintiff filed a complaint in state court, plaintiff also filed a complaint in this Court. However, the parties agreed to proceed in state court and stipulated to the dismissal of the claims originally brought before this Court.

Plaintiff amended its complaint after the Michigan Court of Appeals issued its decision. Plaintiff's amended complaint seeks relief for events that occurred subsequent to the entry of the Consent Judgment. Plaintiff claims, *inter alia*, denial of its substantive due process rights, violation of federal takings law and fraud. Plaintiff alleges, in its amended complaint, that the Township's actions, and inaction in not opposing the referendum, prevented plaintiff from developing its property pursuant to the terms of the Consent Judgment.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is proper if the non-moving party has failed to raise a genuine issue of material fact as to any element of the claim, and the moving party is thereby entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The facts must be construed most favorably to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The non-moving party must come forth with more than a "mere scintilla" of evidence to create a genuine issue of material fact. *Anderson*, 477 U.S. at 252, 106 S. Ct. 2505. The party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S. Ct. 1348. This Court may grant summary judgment to the non-moving party. *Lisle v. Metro. Gov't of Nashville and Davidson County, Tenn.*, Nos. 01-6049, 02-5706., 73 Fed. Appx. 782, 791 (6th Cir. July 9, 2003) (unpublished); *see Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 326, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (district court may enter summary judgment *sua sponte*, "so long as the losing party was on notice that she had to come forward with all her evidence."); *In re Century Offshore Mgmt. Corp.*, 119 F.3d 409, 412 (6th Cir. 1997) (holding summary judgment was appropriate in favor of the non-moving party where the parties fully briefed the determinative issue).

### B. Plaintiff's Motion for Partial Summary Judgment

#### 1. Substantive Due Process – Count II

Plaintiff moves for summary judgment on Count II of its Second Amended Complaint, alleging that defendant's actions with respect to plaintiff and its property rights violated substantive due process. Substantive due process claims generally involve allegations of "(1) deprivations of a particular constitutional right and (2) actions that 'shock the conscience." *Midkiff v. Adams County Reg'l Water Dist.,* 409 F.3d 758, 769 (6th Cir. 2005) (internal citations omitted).

Even where conduct could be considered "conscience shocking," substantive due process requires only that the conduct is rationally related to a legitimate government interest. *Id.* (citing *Mansfield Apartment Owners Ass'n v. City of Mansfield,* 988 F.2d 1469, 1477 (6th Cir. 1993)); *see Tri-Corp Mgmt. Co. v. Praznik*, 33 Fed. Appx. 742, 747 (6th Cir. 2002). In the zoning and land use context, the Sixth Circuit has stated that a state or local land use decision may not be overridden "unless it is such a substantial departure from accepted ... norms as to demonstrate that the [decisionmaker] ... did not actually exercise professional judgment." *Pearson v. City of Grand Blanc,* 961 F.2d 1211, 1222 (6th Cir. 1992) (internal citations omitted). In *Pearson,* the court stated that "[t]he administrative action will withstand substantive due process attack unless it 'is not supportable on any rational basis' or is 'willful and unreasoning action, without consideration and

5

in disregard of the facts or circumstances of the case.'" *Id*. (quoting *Greenhill v. Bailey*, 519 F.2d 5, 10 n. 12 (8th Cir.1975)); *see also* see also *Zinermon v. Burch*, 494 U.S. 113, 115, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990) (explaining that "the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them") (quoting *Daniels v. Williams*, 474 U.S. 327, 331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)).

In *Buckeye Cmty. Hope Found. v. City of Cuyahoga Falls,* 209 F. Supp. 2d 719, 727 (N.D. Ohio 1999), the court held that held that, in the context of a substantive due process claim involving a referendum that delayed receipt of a building permit, "it was neither arbitrary nor capricious for the electorate to bring the referendum, for the City to certify the petitions to the Board of Elections, or for the City to refuse to issue the building permit." The court found that plaintiff's claim was not actionable, even where the Ohio Supreme Court found that the referendum was not allowed under state law. After the Sixth Circuit reversed the district court's grant of summary judgment the Supreme Court reversed the judgment of the Sixth Circuit and ordered the case dismissed, stating, "[t]he subjection of the site-plan ordinance to the City's referendum process, regardless of whether that ordinance reflected an administrative or legislative decision, did not constitute per se arbitrary government conduct in violation of due process." *City of Cuyahoga Falls, Ohio v. Buckeye Cmty. Hope Found.,* 538 U.S. 188, 123 S. Ct. 1389, 155 L. Ed. 2d 349 (2003).

Plaintiff has not shown that defendant's conduct "shocks the conscience," by any measure of the phrase. Even if defendant's conduct could somehow be viewed as "conscience shocking," substantive due process requires only that the conduct is rationally related to a legitimate government interest. *Midkiff,* 409 F.3d 758. This case is strikingly similar to *Cuyahoga Falls*, 538 U.S. 188, 123

6

S. Ct. 1389. Like *Cuyahoga Falls*, the state appellate court held that the Consent Judgment was not subject to a right of referendum. However, as in *Cuyahoga Falls*, the fact that the Michigan Court of Appeals held that the Consent Judgment was not subject to a right of referendum does not establish a Substantive Due Process violation. *Id.* There is simply no evidence in this case that could support a finding that defendant's conduct was arbitrary, capricious or irrational. Accordingly, the Court will deny plaintiff's motion for summary judgment on its substantive due process claim (Count II) and grant summary judgment in favor of defendant on Count II of plaintiff's amended complaint. *See Lisle,* 73 Fed. Appx. at 791; *In re Century Offshore Mgmt. Corp.*, 119 F.3d at 412.

## 2. Regulatory Takings – Count IV

Plaintiff moves for summary judgment on Count IV of its Second Amended Complaint, alleging that defendant's conduct in not opposing the referendum and allowing plaintiff to proceed with its development constituted a takings of its property in violation of the Fifth Amendment. Plaintiff alleges that defendant's actions amounted to either a "categorical" or "temporary" taking of its property. *See Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992); *see also First English Evangelical Lutheran Church of Glendale v. County of L.A.*, 482 U.S. 304, 107 S. Ct. 2378, 96 L. Ed. 2d 250 (1987). If a state provides an adequate procedure for seeking just compensation, a plaintiff must follow that procedure before pursuing a Fifth Amendment takings claim in federal court. *Seguin v. City of Sterling Heights*, 968 F.2d 584, 587 (6th Cir. 1992) (citing *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 195, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985)). Michigan's inverse condemnation procedure provides plaintiff with an adequate remedy. *See id.* at 588.

7

Plaintiff does not allege that it pursued its just compensation claims under Michigan law before proceeding in federal court. Instead, plaintiff alleges that any remedies provided under Michigan law are inadequate. *See* Second Amended Complaint at ¶ 71. In *Macene v. MJW, Inc.*, 951 F.2d 700 (6th Cir. 1991), the court held that a plaintiff's claim was not ripe for adjudication in federal court where, as here, plaintiff did not attempt to use the State of Michigan's inverse condemnation procedure. Accordingly, the Court finds that plaintiff's regulatory takings claim is not ripe for federal court adjudication.[4] Therefore, the Court will deny plaintiff's motion for partial summary judgment on this claim and dismiss Count IV as not ripe for adjudication.

### 3. Fraud – Count IX

Plaintiff also moves for summary judgment on Count IX of its Second Amended Complaint, alleging that defendant, by entering into the Consent Judgment and thereafter allowing the referendum to proceed, falsely promised that defendant would allow plaintiff to develop its property. A claim for fraudulent misrepresentation or actionable fraud generally requires a showing that "(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage." *Bergen v. Baker* 264 Mich. App. 376, 382, 691 N.W.2d 770, 774 (2004) (citing *M & D, Inc. v. McConkey*, 231 Mich. App. 22, 27, 585 N.W.2d 33 (1998)) (citations omitted). A fraud claim may be based on a future promise if at the time of the "promise" the

---

[4] The Court also notes that, even if plaintiff's regulatory takings claim was ripe for adjudication, plaintiff has not demonstrated a deprivation of all economically beneficial or productive use of its land and would not be entitled to summary judgment.

promisor had no intention of fulfilling it. *Eagle Trim, Inc. v. Eagle-Picher Indus., Inc.,* 205 F. Supp. 2d 746, 754 (E.D. Mich. 2002) (citing *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 337-38, 247 N.W. 2d 813 (1976) ("a fraudulent misrepresentation may be based upon a promise made in bad faith without intention of performance.")).

To fall within the bad faith exception, "evidence of fraudulent intent ... must relate to conduct of the actor 'at the very time of making the representations, or almost immediately thereafter.'" *Hi-Way*, 398 Mich. at 338-339 (quoting *Danto v. Charles C Robbins, Inc.*, 250 Mich. 419, 425; 230 N.W. 188 (1930)); *see Ventura Systems, Inc. v. Jenzano Corp.,* 2002 WL 31082150 (Mich. App. 2002) (bad faith exception applicable where action occurred "within days" of promise); *see also Colby v. Zimmerman,* 2001 WL 1219414 (Mich. App. 2001) (issue of fact, precluding summary judgment, existed where alleged fraud occurred on same day as promise); *Tahboub v. Genesys PHO,* 2001 WL 672398 (Mich. App. 2001) (letter written four months after promise was too remote in time to establish bad faith exception to fraud); *Jim-Bob, Inc. v. Mehling,* 178 Mich. App. 71, 90, 443 N.W. 2d 451 (Mich. App. 1989) (question of fact existed where there was evidence that at the time a promise was made, defendant did not intend to keep it); *Gorman v. Soble*, 120 Mich. App. 831, 841, 328 N.W. 2d 119, 124 (Mich. App. 1982) (statement made one day after entry of consent judgment was sufficient to establish that promisor had no intention of fulfilling promises made in consent judgment); *Polydyne, Inc. v. Kirk,* 238 F.3d 423, 2000 WL 1888654 (6th Cir. 2000) (summary judgment was inappropriate where alleged evidence of bad-faith occurred within hours of reaching agreement).

Plaintiff claims that the Township's promise, in the Consent Judgment, to allow plaintiff to proceed with its development plans, was made in bad faith without any intention of performance.

As defendant points out, however, "there is no showing in this case that the Township ever entered into or made a promise that it never intended to keep." Plaintiff relies on dicta by the Michigan Court of Appeals, where the court stated that the Township, "failed to present any legal argument in support of enforcement of the judgment and in opposition to the submission of the issue of rezoning to referendum." Brief in Support of Pl.'s Mot. for Summ. J., Ex. 2 at 4. Plaintiff also argues that the Township concealed its intent to claim that the Consent Judgment constituted a rezoning.

Plaintiff has not established entitlement to judgment as a matter of law on count IX. Plaintiff seeks to hold defendant liable for fraud, based on conduct and events that occurred nearly two months after entry of the Consent Judgment. To the extent that defendant's conduct related to the zoning referendum might establish a fraud claim under the bad faith exception, which it does not, the Court finds that defendant's conduct was too remote in time in connection with the entry of the Consent Judgment, such that plaintiff's claim fails as a matter of law and defendant is entitled to judgment as a matter of law. *See Century Offshore Mgmt. Corp.*, 119 F.3d at 412; *see also Ventura Systems,* 2002 WL 31082150; *see also Zimmerman,* 2001 WL 1219414; *Mehling,* 178 Mich. App. at 90, 443 N.W. 2d 451. Accordingly, the Court will deny plaintiff's motion for partial summary judgment on this claim and grant summary judgment in favor of defendant on Count IX.

### C. Defendant's Motion for Summary Judgment

Defendant also filed a motion for summary judgment and asks this Court to abstain from further decision on this case based on *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971), and/or *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S. Ct. 1098, 87 L. Ed. 1424 (1943). Defendant asks the Court to dismiss the case and "send this case back to the State Courts," because there are important state interests involved regarding interpretation of the Consent Judgment.

Plaintiff argues that this case does not present circumstances under which the state court intended to retain jurisdiction. Specifically, plaintiff argues that it is not attempting to enforce or interpret the Consent Judgment and that the federal claims at issue here are separate from the state court litigation, as they arose subsequent to the entry of the Consent judgment. Defendant responds that the Consent Judgment provides for exclusive jurisdiction in the state court to interpret the Consent Judgment and the parties' rights and responsibilities thereunder. At the May 31, 2005 hearing, the Court asked the parties to submit supplemental briefs on the impact of the Emmet County Circuit Court's purported retention of jurisdiction over the enforcement and interpretation of the Consent Judgment.

Abstention is a limited exception to the "virtually unflagging" obligation of federal courts to exercise the jurisdiction given them. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 817, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1975). Under *Younger*, a district court should abstain from exercising jurisdiction where there is an ongoing judicial proceeding, the proceeding implicates important state interests and there is an adequate opportunity in the state court proceedings to raise a constitutional challenge. *Tindall v. Wayne County Friend of the Court*, 269 F.3d 533, 538 (6th Cir. 2001) (citations omitted). The *Burford* abstention doctrine provides that a district court must decline to interfere with state court proceedings where there are "(1) difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar;" or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." Abstention under *Younger* or *Burford* is not appropriate in this case, as there are no "ongoing" judicial proceedings in state court.

However, other reasons favor dismissal of plaintiff's remaining claims. Those reasons favoring dismissal include: (1) the state court's retention of jurisdiction over the enforcement and interpretation of the terms of the Consent Judgment and the parties' intent in entering into the Consent Judgment; and (2) notions of comity and federalism.

The parties and the Emmet County Circuit Court contemplated that the Emmet County Circuit Court would retain jurisdiction over the enforcement of the Consent Judgment and matters related to the intent of the parties in entering into the Consent Judgment. *See* Consent Judgment, Def's Mot. for Summ. J., Ex. 1, ¶ 13. Consent decrees and judgments are binding contracts. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 372 (6th Cir. 1998). The interpretation of a consent decree or judgment is a question of contractual interpretation. *Huguley v. Gen. Motors Corp.,* 67 F.3d 129 (6th Cir. 1995). Because this contract was formed in the State of Michigan, it is interpreted under Michigan law. *Sault Ste. Marie,* 146 F.3d at 372 (citing *Sawyer v. Arum*, 690 F.2d 590, 593 (6th Cir. 1982)). Under Michigan law, "[t]he primary goal in the construction or interpretation of any contract is to honor the intent of the parties." *Id*. (citing *Rasheed v. Chrysler Corp.*, 445 Mich. 109, 517 N.W.2d 19, 29 n. 28 (1994)). The Court "must look for the intent of the parties in the words used in the instrument." *Mich. Chandelier Co. v. Morse*, 297 Mich. 41, 297 N. W. 64, 67 (1941). Where a settlement agreement between the parties is unambiguous, the Court must enforce the plain meaning of its terms. *Hidrofiltros, de Mexico, S.A. de C.V. v. Rexair, Inc.,* 355 F.3d 927, 930 (6th Cir. 2004).

In *Flanagan v. Arnaiz,* 143 F.3d 540 (9th Cir. 1998), a federal district court specifically retained jurisdiction to interpret the terms of its judgment, but did not state that such jurisdiction was "exclusive." Plaintiff filed a motion in state court after the district court entered its order retaining

jurisdiction over a settlement agreement between the parties. *Id*. The Ninth Circuit found that plaintiff's filing in state court was unreasonable because of the federal district court's explicit retention of jurisdiction. *Id*. Plaintiff argued that because the district court did not expressly state that its continuing jurisdiction was "exclusive," it was not, and the state court had concurrent jurisdiction to enforce the federal court settlement. *Id*. Rejecting plaintiff's reliance on cases construing forum selection clauses, the court stated, "a court order exercises judicial authority, while a forum selection clause in a private contract does not. The context of the retention of jurisdiction, a provision for future enforcement of a settlement order, implies that the retention was meant to be exclusive." *Id*. The Court noted that the Second and Eleventh Circuits ruled upon similar language in a consent judgment that did not include the word "exclusive," and held that the language amounted to retention of exclusive jurisdiction to enforce a judgment. *Id*. (citing *United States v. Am. Soc'y of Composers (In re Karmen)*, 32 F.3d 727, 731-32 (2d Cir. 1994); *United States v. Am. Soc'y of Composers*, 442 F.2d 601, 603 (2d Cir. 1971); *Battle v. Liberty Nat'l Life Ins. Co.*, 877 F.2d 877, 880-81 (11th Cir. 1989)). The court, in *Flanagan* stated further that "it would make no sense for the district court to retain jurisdiction to interpret and apply its own judgment to the future conduct contemplated by the judgment, yet have a state court construing what the federal court meant in the judgment."

While *Flanagan,* 143 F.3d 540, involved a matter where a federal district court enjoined a plaintiff from further filing in state court after the district court explicitly and exclusively retained jurisdiction over matters related to a consent judgment, the reasoning expressed therein is persuasive. Indeed, the facts of this case, as they relate to the retention of jurisdiction, virtually mirror those of *Flanagan*, as here, a state court, and not a federal court retained jurisdiction over its judgment. Here,

13

like *Flanagan*, the parties stipulated to the terms in the Consent Judgment, including the state court's retention of jurisdiction. Furthermore, like *Flanagan*, the plaintiff has moved back and forth between federal and state court. Plaintiff originally chose to litigate its claims in state court, which culminated in the entry of the Consent Judgment. Like *Flanagan*, where the court determined that the state court should not be put in a position of determining what the federal court meant in its judgment, it would not make sense for the state court to retain jurisdiction, yet have this Court determine what the state court meant in the Consent Judgment. *Id*. Therefore, the Court finds the instant matter presents an equally strong case for litigating these issues in state court, as did the *Flanagan* case for litigating the issues in federal court.

Several decisions from other jurisdictions support dismissal of this action. In *Magnolia v. Conn. Gen. Life Ins. Co.,* 157 F. Supp. 2d 583, 587 (D. Md. 2001), the court dismissed an action where a California District Court retained jurisdiction over "enforcement and interpretation" of a class settlement. In *Johnson v. Hoffman,* No. 95-7431, 1996 WL 296527 (E.D. Pa. 1996), the court noted, in dicta, that even if the court had jurisdiction to hear the case before it, the court should abstain from hearing a case in deference to a Florida state court, which retained jurisdiction over a settlement agreement. Furthermore, in *House v. Aiken County Nat. Bank,* 956 F. Supp. 1284, 1292 (D.S.C. 1996), the court dismissed a case without prejudice to allow plaintiff to return to state court where the state court retained jurisdiction over a settlement agreement. While the decisions noted above, are not binding on this Court, the reasoning expressed therein supports the notion that a district court may dismiss an action where, as here, a state court retains jurisdiction over a settlement agreement.

In *Gottfried v. Med. Planning Serv's, Inc.,* 142 F.3d 326, 330-31 (6th Cir. 1998), the court stated, "equity, comity, and our federalist judicial system require the federal court to give the state judge the first chance to bring the injunction into compliance with constitutional law." Citing *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 61 S. Ct. 643, 85 L. Ed. 971 (1941)), the Court noted that the policies underlying the abstention doctrine of *Pullman*, meaning the traditional avoidance of unnecessary constitutional decisions and the sovereign respect due to state courts, suggest this is the correct result. *Id. Pullman* requires a federal court, faced with a constitutional challenge to an uncertain state law, to avoid a direct confrontation if a decision from the state court "might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem."

*Gottfried* involved issues related to a state court injunction, where plaintiff sought to strike down the injunction as unconstitutional. An injunction and a consent judgment obviously differ in many respects and *Pullman* abstention does not apply in this case. However, even though *Gottfried* is factually distinguishable, the principles that equity, comity and our federalist system require a state court to have the first opportunity to enforce its own judgment apply equally to this case. *Id.* In *Gottfried*, as well as this case, no specific abstention doctrine applies, yet in *Gottfried*, the court noted that abstaining afforded the state court the respect it deserved in our federalist judicial system. *Gottfried*, 142 F.3d at 332. Likewise, in this case, allowing the state court to decide the proper scope of its own Consent Judgment affords the state court the proper respect it deserves in our federalist judicial system. *See Magnolia,* 157 F. Supp. 2d 583; *Hoffman,* 1996 WL 296527; *House,* 956 F. Supp. 1284.

There are also issues of comity raised by this case. Comity originally emerged in the context

15

of international law to reflect the recognition by one state or nation of the laws, policies and judicial acts of another. *See* Black's Law Dictionary, 261- 62 (7th ed. 1999). In *Hilton v. Guyot*, 159 U.S. 113, 16 S. Ct. 139, 40 L. Ed. 95 (1895), the Supreme Court explained that "comity" in the legal sense, is neither a matter of absolute obligation, nor of mere courtesy and good will. Comity is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws. *Id.* at 163-64. The rule of comity also applies to the recognition of federal and state courts of their respective judgments in our federal system of governance. *Mich. Comm. Servs., Inc. v. N.L.R.B.* 309 F.3d 348, 356 (6th Cir. 2002) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 586, 119 S. Ct. 1563, 143 L. Ed. 2d 760 (1999) (stating that "[m]ost essentially, federal and state courts are complementary systems for administering justice in our Nation. Cooperation and comity, not competition and conflict, are essential to the federal design.")).

Plaintiff argues that it is not attempting to enforce or interpret the Consent Judgment. However, by plaintiff's own admission, plaintiff seeks damages for defendant's "failure and refusal to allow [p]laintiff to construct its development pursuant to the ... Consent Judgment." Pl.'s Supplemental Brief, p. 9. Plaintiff's argument is unpersuasive, as the issues raised herein squarely involve questions of the parties' intent in entering into the Consent Judgment and issues related to the enforcement of the terms of the Consent Judgment.

While *Younger* and *Burford* abstention, as requested by defendant, are not appropriate in this case, the Court finds that dismissal of plaintiff's remaining claims is still warranted. Dismissal of plaintiff's remaining claims is appropriate based on the state court's retention of jurisdiction and is

buttressed by principles of comity and federalism and by the language in *Gottfried*. As noted above, *Gottfried* involved proceedings related to a state court injunction, but the idea that the state court should have the first opportunity to rule on its own judgment applies with even more force here, as the parties stipulated to allow the state court to enforce and interpret the terms and intent of the parties in entering into the Consent Judgment. Furthermore, while obviously not a matter of absolute obligation, principles of comity favor dismissal of this action. Plaintiff had an opportunity to choose its forum long ago and chose to litigate in state court. Plaintiff should not now be allowed to bring this action in federal court, where plaintiff essentially asks this Court to enforce and interpret the terms and intent of the parties in entering into the Consent Judgment. Plaintiff has amended its complaint to include claims that arose after the entry of the Consent Judgment, but to hold that the state court's retention of jurisdiction over the Consent Judgment means nothing here would frustrate the very purpose of the parties stipulating to and the state court including such language in the Consent Judgment. Accordingly, for the aforementioned reasons and out of respect to the state court judge, who retained jurisdiction over the enforcement and interpretation of the Consent Judgment, the Court finds that this case properly belongs in state court and will dismiss plaintiff's remaining claims. *See Hoffman,* 1996 WL 296527; *House,* 956 F. Supp. 1284.

### III. Conclusion

For all the foregoing reasons, the Court will deny plaintiff's motion for partial summary judgment as to Counts II, IV and IX and grant judgment in favor of defendant on Counts II and IX. The Court will dismiss Count IV as not ripe for adjudication. Furthermore, the Court will grant defendant's motion for summary judgment and dismiss plaintiff's remaining claims.

An Order consistent with this Opinion shall issue forthwith.


Dated: July 27, 2005                                    /s/ David W. McKeague
                                                        DAVID W. McKEAGUE
                                                        UNITED STATES CIRCUIT JUDGE